[783 NYS2d 339]

WIEN & MALKIN LLP et al., Appellants, v HELMSLEY-SPEAR, INC., Respondent.

First Department, October 14, 2004

APPEARANCES OF COUNSEL

*Dewey Pegno & Kramarsky LLP*, New York City (*Thomas E.L. Dewey* and *Elaine Block* of counsel), and *Thelen Reid & Priest LLP*, New York City, for appellants.

*Dickstein Shapiro Morin & Oshinsky LLP*, New York City (*Howard Graff, Deborah A. Skakel, Judith R. Cohen* and *Alexander D. Widell* of counsel), for respondent.

## OPINION OF THE COURT

WILLIAMS, J.

This matter comes before us as a result of the United States Supreme Court's October 6, 2003 vacatur of the order of this Court and remand for reconsideration (300 AD2d 32 [2002], *lv denied* 99 NY2d 511 [2003], *judgment vacated* 540 US 801 [2003]) in light of its June 2, 2003 determination in *Citizens Bank v Alafabco, Inc.* (539 US 52 [2003]). In our order affirming Supreme Court, New York County's confirmation of the arbitration award at issue, we held, inter alia, that since the dispute at issue involved New York entities and, specifically, addressed the termination of defendant as managing agent of buildings located within New York City, it did not have a substantial effect on interstate commerce; hence, state arbitration law applied rather than the Federal Arbitration Act (FAA; 9 USC § 1 *et seq.*) and under state law, the arbitration panel's findings were not so arbitrary as to warrant vacatur. *Alafabco* subsequently clarified the broad scope of the FAA's application pursuant to the Commerce Clause by expressly reaffirming that the FAA applies to any transaction "affecting commerce," whether or not there is a "substantial effect" on interstate commerce (*Alafabco*, 539 US at 56-57).

Consequently, the issue before us at this point is whether the portions of the award presented for review exhibit a "manifest disregard of the law," the federal standard for review of an arbitration award, such that vacatur of the award is warranted (*Matter of Spear, Leeds & Kellogg v Bullseye Sec.*, 291 AD2d 255, 256 [2002]; *Halligan v Piper Jaffray, Inc.*, 148 F3d 197, 204 [2d Cir 1998], *cert denied* 526 US 1034 [1999]). By way of contrast, the New York standard we previously applied requires confirmation of the award unless it violates "a strong public policy, is totally irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (*Matter of*

*Town of Callicoon [Civil Serv. Empls. Assn., Inc.]*, 70 NY2d 907, 909 [1987] [citations omitted]).

This case arose due to a dispute between the plaintiffs, general partnerships that own and operate various parcels of commercial real estate in New York City, and defendant Helmsley-Spear, Inc., the alleged latest incarnation of the entity that has been the long-time managing agent for plaintiffs' properties. The properties were all purchased by Lawrence Wien and his partners (including his son-in-law, plaintiff Peter L. Malkin), who proceeded to syndicate each of the 11 owner partnerships for public investment, then lease eight of the syndications to other general partnerships to operate the properties, while retaining three of the syndications to operate themselves. The properties purchased were typically buildings to which Wien and his partners had been introduced by Harry Helmsley and, in return, they would grant Helmsley's companies the right to lease and manage these buildings. Harry Helmsley also held a partnership interest in the Wien entities. The Wien entities would supervise and manage the operating partnerships, handling such responsibilities as accounting, payment of mortgages and taxes, preparing tax returns, and holding annual partnership meetings, while Helmsley entities would actually manage and operate the buildings, which included marketing, leasing space, and maintenance.

The partnership agreements for the buildings all contain similar provisions for the removal without cause of the managing agent:

> "[I]n the event of the death of Harry B. Helmsley or his retirement from active participation in the conduct of business of Helmsley-Spear, Inc. or its successors, said change of the managing agent shall require only the approval by the written vote of parties representing at least fifty (50%) per cent of the ownership of the assets of the joint venture."

Some of the agreements set the minimum voting requirement for removal of the managing agent at 60% of the ownership. None of the partnership agreements at issue imposes any meeting or disclosure requirements for any vote on termination or any other subject and none provides Helmsley-Spear with any role other than managing agent.

In June 1997, Wien & Malkin and Peter Malkin, concerned by the declining fortunes of Helmsley-Spear dating back to Harry Helmsley's illness and demise and the ascendency of his widow,

Leona, who succeeded him as chair of Helmsley-Spear, commenced this lawsuit to remove Helmsley-Spear as the exclusive managing agent of the properties. Malkin also sought to invoke the removal without cause provisions in the partnership agreements by soliciting the written consents of the partners. When the counsel for Helmsley-Spear obtained a temporary restraining order enjoining Helmsley-Spear's termination on the eve of partnership meetings scheduled for July 15, 1997, Malkin allegedly had sufficient written consents from the partnership interests in Lincoln Building Associates, Toy Center Joint Venture and Fisk Building Associates to remove Helmsley. In September 1997, Justice Gammerman stayed the litigation pending the outcome of arbitration.

Also in September 1997, unbeknownst to plaintiffs, Leona Helmsley, in an effort to resolve a long-running dispute, entered into agreements with the principals of defendant Helmsley-Spear, Inc., who had formed a company called HS Acquisition Corp., also known as Newco. These agreements provided, inter alia, that her company, Helmsley Enterprises, which owned 99.9% of the original Helmsley-Spear, would purchase the remaining .1% of Helmsley-Spear from defendant's principals, that defendant's principals would resign from Helmsley-Spear, that their option to purchase Helmsley-Spear would be expressly terminated, and that Mrs. Helmsley would grant them an irrevocable proxy to vote her partnership interest on "the designation of Newco as the managing agent of each of the Properties for the Management Period and to vote against or refuse to consent or approve any change in such designation for the duration thereof."

Shortly thereafter, defendant's principals renamed HS Acquisition Corp. Helmsley-Spear, Inc., and Helmsley-Spear proceeded to assign to Helmsley-Spear, Inc. property management agreements, giving it the right to manage the properties at issue here. Neither Helmsley-Spear's partnership agreements with plaintiffs nor the property management agreements provided for such unilateral assignment by Helmsley-Spear, nor were plaintiff partners advised of the assignment; indeed, the parties to the assignment contractually agreed to conceal the information that Helmsley-Spear and Helmsley-Spear, Inc. were two different companies, and defendants only made disclosure, exclusively to plaintiff Peter Malkin, upon an order by the arbitration panel.

Subsequently, in December 1997, Peter Malkin and Leona Helmsley reached a settlement of his claims against her,

individually. This agreement provided, inter alia, that Helmsley-Spear be removed as managing agent at four of the partnership's properties, including the Toy Center and the Lincoln Building, by September 1998; that Malkin was free to pursue any claims he had against Helmsley-Spear; and that Mrs. Helmsley would give him her irrevocable proxy for the removal without cause and replacement of Helmsley-Spear. The latter provision, of course, is in direct conflict with the irrevocable proxy she gave to the principals of Helmsley-Spear, Inc.

The arbitration also commenced in late 1997. Wien & Malkin asserted claims that Helmsley-Spear should be terminated as managing agent in all 11 buildings ''for cause,'' due to mismanagement, and that Helmsley-Spear had been duly terminated ''without cause'' at the buildings where the vote to terminate had been taken.

In the arbitration award, dated March 30, 2001, the arbitrators, inter alia, denied plaintiffs' claim for dismissal ''for cause,'' finding that plaintiffs had failed to prove that Helmsley-Spear had mismanaged the buildings, denied plaintiffs' claim for dismissal ''without cause,'' finding that plaintiffs failed to provide the partners with adequate disclosure such that their consent was informed and thus that ''no valid vote of any kind has taken place,'' enjoined plaintiffs, for six months, from calling a partnership meeting to remove Helmsley-Spear as managing agent, mandating that any proxies be ''complete and accurate,'' and upheld the voting agreement between Mrs. Helmsley and Helmsley-Spear, Inc.

On April 6, 2001, Helmsley-Spear moved by order to show cause to confirm the award; the court granted the motion without explanation on the return date, June 18, 2001, and judgment was entered on July 23, 2001.

Subsequently, there was additional litigation regarding the voting process as to the four ''without cause'' partnerships. This culminated in Justice Gammerman approving new solicitation materials and voting procedures and scheduling a new vote for May 2002. That vote resulted in Helmsley-Spear, Inc.'s removal as managing agent at the Lincoln Building, the Toy Building and the Fisk Building. In a September 2002 judgment confirming the vote, Justice Gammerman held that Helmsley-Spear should also be removed at 501 Seventh Avenue because Leona Helmsley's vote to retain it was inconsistent with her voting agreement with Peter Malkin. This Court affirmed that judgment (*Wien & Malkin, LLP v Helmsley-Spear, Inc.*, 302 AD2d 253 [2003], *vacated* 307 AD2d 808 [2003]).

Plaintiffs now allege that the arbitration panel demonstrated a manifest disregard for the law in determining that Helmsley-Spear, Inc. is the valid successor in interest to the former Helmsley-Spear Corporation, and in enjoining Wien & Malkin from interfering with the voting agreement between Leona Helmsley and Helmsley-Spear, Inc. The former determination is alleged to violate the legal principle that personal services contracts may not be assigned, and the latter is alleged to ignore the principle that partnership affairs are the exclusive province of the partners and a partner may not assign his proxy to non-partners.

As noted above, the United States Supreme Court has reiterated that Congress's regulation of interstate commerce extends to matters merely affecting interstate commerce; hence where the subject matter of an arbitration does so, the FAA is applicable and the manifest disregard standard applies (*Alafabco* at 56-57 ["'Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control' " (citations omitted)]). Here, the parties are in agreement that such is the case, and numerous examples are cited as to how the matters at issue impact interstate commerce. Unlike *Alafabco*, however, the agreement at issue does not specifically provide that the parties use the FAA to settle disputes regarding the agreement's interpretation.

As we noted in *Sawtelle v Waddell & Reed, Inc.* (304 AD2d 103, 108 [2003]):

> "Under the [FAA], a court may vacate an arbitration award either on the grounds set forth in section 10 (a) of the FAA or on one of the several judicially recognized 'nonstatutory' grounds, such as irrationality . . . manifest disregard of the law . . . or public policy . . .
>
> " '[M]anifest disregard "clearly means more than error or misunderstanding with respect to the law" [citation omitted]' and 'to modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit and clearly applicable to the case' ([*Halli-*

*gan v Piper Jaffray, Inc.*, 148 F3d 197, 202]; *DiRussa v Dean Witter Reynolds Inc.*, 121 F3d 818, 821, *cert denied* 522 US 1049). '[A] court may infer that the arbitrators manifestly disregarded the law if it finds that the error made by [them] is so obvious that it would be instantly perceived by the average person qualified to serve as an arbitrator' ([*Willemijn Houdstermaatschappij, BV v Standard Microsystems Corp.*, 103 F3d 9, 13]) . . . 'If there is "even a barely colorable justification for the outcome reached," the court must confirm the arbitration award' (*id.*, quoting *Matter of Andros Cia. Maritima, S.A. of Kissavos [Marc Rich & Co., A.G.]*, 579 F2d 691, 704)" (see also *Wallace v Buttar*, 378 F3d 182, 189-190 [2d Cir 2004]).

When this standard is applied to the facts at issue, such clear legal error is apparent and mandates vacatur of challenged portions of the arbitration award. To wit, the arbitration panel demonstrated a manifest disregard of contract law and the applicable agreements by ignoring the legal principles precluding the covert, unilateral assignment of the personal services contracts at issue and by finding that the Helmsley-Spear, Inc. principals' 1970 option to purchase the Helmsleys' interest in Helmsley-Spear survived their September 1997 agreement with Leona Helmsley, that the option was duly exercised, that Helmsley-Spear and its successors had a vested right to remain as managing agent despite any such "change in form," and that the agreements provided that Wien & Malkin had a fiduciary duty to Helmsley-Spear. They also evidenced such manifest disregard by finding that Helmsley-Spear could not be terminated as managing agent due to alleged defects in the proxy procedure.

The conduct of Leona Helmsley and defendant's principals in entering an agreement assigning Helmsley-Spear's personal services contracts to defendant was a clear violation of the well-settled legal principle that personal services contracts, i.e., the property management agreements here wherein Helmsley-Spear acted as managing agent for plaintiff principals, may not be assigned without the consent of the principal (*see Security Pac. Mtge. & Real Estate Servs., Inc. v Canadian Land Co. of Am., N.V.*, 690 F Supp 1214, 1221 [SD NY 1988], *affd* 891 F2d 447 [2d Cir 1989]; *Matter of Lovece [Local 32B, Bldg. Serv. Empls. Intl. Union]*, 37 Misc 2d 709 [1962]). The arbitrators utterly disregarded this clear, applicable principle, which plaintiffs

brought to their attention, not only by tacitly condoning, for the most part, the covert nature of the transaction, also a violation of agency law principles (*Cristallina S.A. v Christie, Manson & Woods Intl., Inc.*, 117 AD2d 284, 293 [1986]), but additionally by erroneously concluding that Helmsley-Spear, Inc. was a mere "change of form" or reorganization and thus the valid successor in interest to Helmsley-Spear due to the purported exercise of the contractually terminated 1970 option agreement. They ignored the facts that Helmsley-Spear, Inc. had different officers, directors, shareholders, management personnel, financial structure and fewer properties under management than Helmsley-Spear.

These findings also manifestly disregarded the applicable agreements, including the 1970 option agreement and the September 1997 agreements expressly terminating the option and providing for Leona Helmsley's purchase from defendant's principals of the sole .1% share of Helmsley-Spear that she did not own, thereby extinguishing any vestige of their ownership interest in Helmsley-Spear. The panel, proceeding as if these valid agreements did not exist, used the terminated option, and the fiction that it was duly exercised, as the fulcrum of the arbitration award to endow Helmsley-Spear and its successors with a vested right to continue as managing agent, a right not provided in any of the agreements.

The arbitration panel further exhibited a manifest disregard for the applicable agreements in finding that Wien & Malkin was bound to retain Helmsley-Spear as managing agent due to defects in the proxy procedure. The decline of the Helmsley real estate empire was a valid concern for Wien & Malkin in deciding whether to continue using the Helmsley entities as managing agents. The management agreements in question provided that those entities could be terminated "without cause" if the requisite percentage of partnership votes was obtained. Contrary to the findings of the arbitration panel, the partnership agreements did not provide for a particular method of solicitation of proxies for a vote to terminate the managing agents and did not establish a fiduciary duty to them. Nor was there any showing that Peter Malkin fraudulently induced the partners to give him their proxies.

Plaintiffs also contend that the panel manifestly disregarded tenets of partnership law in upholding Leona Helmsley's voting agreement with Newco/Helmsley-Spear, Inc. The agreement transferred to Newco/Helmsley-Spear, Inc. Leona Helmsley's ir-

revocable proxy to vote on "the designation of Newco as the managing agent of each of the Properties for the Management Period and to vote against or refuse to consent or approve any change in such designation for the duration thereof." The agreement allegedly violates Partnership Law § 40 (7) and § 53 (1), which prohibit membership in a partnership without unanimous consent of the partners and interference in the management of partnership affairs by the assignee of a partner's interest, respectively.

We find that Helmsley did not transfer her partnership interest here, but merely made an agreement to vote for the retention of Newco as managing agent, a vote she was entitled to cast with or without the agreement. Furthermore, our holding that the arbitrators fatally erred in finding the proxy solicitation process defective renders this issue academic, since it validates the results of the partnership votes already taken, which favored termination of Helmsley-Spear, Inc., and allows similar partnership votes to go forward.

Accordingly, the judgment of the Supreme Court, New York County (Ira Gammerman, J.), entered July 23, 2001, which, to the extent appealed from, granted the motion by defendant Helmsley-Spear, Inc. to confirm an arbitration award dated March 30, 2001, should be reversed, on the law, without costs, that part of the award which declared that Helmsley-Spear, Inc. was the valid successor in interest to the former Helmsley-Spear Corporation vacated, Helmsley-Spear, Inc. is declared to be a new entity, the assignment of the property management agreements is declared to be invalid, the matter of Helmsley-Spear, Inc.'s termination is remanded for a vote, and the issue of whether Leona Helmsley was obligated to vote to terminate Helmsley-Spear, Inc. is declared to be academic.

ELLERIN, J.P., MARLOW and GONZALEZ, JJ., concur.

Judgment, Supreme Court, New York County, entered July 23, 2001, reversed, on the law, without costs, that part of the arbitration award which declared that Helmsley-Spear, Inc. was the valid successor in interest to the former Helmsley-Spear Corporation vacated, Helmsley-Spear, Inc. is declared to be a new entity, the assignment of the property management agreements is declared to be invalid, the matter of Helmsley-Spear, Inc.'s termination is remanded for a vote, and the issue of whether Leona Helmsley was obligated to vote to terminate Helmsley-Spear, Inc. is declared to be academic.