■ In the Matter of JOSEPH ROFFLER et al., Appellants-Respondents, v SPEAR, LEEDS & KELLOGG, Respondent-Appellant. [788 NYS2d 326]—

Judgment, Supreme Court, New York County (Walter B. Tolub, J.), entered on or about February 17, 2004, vacating an amended arbitration award and bringing up for review an order, same court and Justice, entered on or about February 4, 2004, which denied petitioners' motion to confirm the amended arbitration award, granted respondent's cross motion to vacate the award, and remanded the matter to the National Association of Securities Dealers-Regulation for determination by the same panel of arbitrators, reversed, on the law, without costs, the award of $1.25 million reinstated and confirmed, and the matter remanded for the entry of judgment, including statutory costs and interest from March 3, 2003.

This Court affirmed the vacatur of the initial arbitration award in this matter upon the grounds that the arbitration panel exceeded its authority, manifestly disregarded the law and made an irrational award (*Matter of Spear, Leeds & Kellogg v Bullseye Sec.*, 291 AD2d 255 [2002]). We held that the award which, without explanation, provided monetary relief to individual claimants for damage suffered by a corporation, was made

in manifest disregard of the law. We also found that the award was inherently inconsistent because all claims brought by petitioners sought redress for the actions of Pasquale Schettino, a partner in the respondent firm without finding Schettino individually liable. The present determination, however, provides an explanation sufficient to cure the previous defects in that the panel found respondent responsible for the actions of its partner, and that Schettino had guaranteed any losses incurred by petitioners would be "made good" by respondent.

In *Sawtelle v Waddell & Reed* (304 AD2d 103, 108 [2003]), we observed that the United States Supreme Court has repeatedly viewed the Federal Arbitration Act as embodying "a strong 'liberal federal policy favoring arbitration agreements,' providing only for extremely limited judicial review of an arbitration award." In addition, because of such limited review, the "showing required to avoid summary confirmation of an arbitration award is high, . . . and a party moving to vacate the award has the burden of proof" (*Willemijn Houdstermaatschappij, BV v Standard Microsystems Corp.*, 103 F3d 9, 12 [2d Cir 1997]). Moreover, a reviewing court must proceed with caution because "[w]hen arbitrators explain their conclusions . . . in terms that offer even a barely colorable justification for the outcome reached," the court must confirm the award (*Matter of Andros Compania Maritima, S.A. of Kissavos [Marc Rich & Co., AG.]*, 579 F2d 691, 704 [2d Cir 1978]; *see Willemijn Houdstermaatschappij*, 103 F3d at 13).

In this case the arbitrators set forth an explanation for their determination, based on a factual finding that Schettino had made an enforceable promise, directly to petitioners in their individual capacity, to cover their losses, and had the apparent authority to bind the firm. "[A] shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder . . . whether or not the corporation may also bring an action" (*Ceribelli v Elghanayan*, 990 F2d 62, 63 [2d Cir 1993]). Therefore, petitioners have a colorable individual claim against the firm because Schettino (and therefore respondent) violated his assumed obligation by not paying for the losses they incurred as a result of his conduct (*see Vincel v White Motor Corp.*, 521 F2d 1113, 1118 [2d Cir 1975] [exception to rule that only corporation and not shareholder in individual capacity may sue defendant for wrong to corporation "stem(s) from the nature of the wrong alleged or a special relationship between the suing shareholder and the defendant creating a duty, contractual or otherwise, other than that owed to the corporation"]).

Respondent contends that the award was in manifest disregard of the law and exceeded the arbitrators' authority because petitioners did not assert any individual claims in their pleadings, and because this Court had stated in our prior decision that the panel exceeded its authority as it granted relief on claims not asserted. Use of the "manifest disregard" doctrine "is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent" (*Duferco Intl. Steel Trading v T. Klaveness Shipping A/S*, 333 F3d 383, 389 [2d Cir 2003]). To vacate the award on the basis of manifest disregard of the law, the court must find that "the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether," and "the law ignored by the arbitrators must be 'well defined, explicit, and clearly applicable' " to the case (*Folkways Music Publs., Inc. v Weiss*, 989 F2d 108, 112 [2d Cir 1993]). Moreover, manifest disregard of the law means more than an error or misunderstanding of the applicable law (*see Sawtelle*, 304 AD2d at 108). Rather than refusing to apply well-defined law, the arbitrators made plain that this award to petitioners was based upon their factual determination of Schettino's obligation to petitioners on behalf of respondent. The award should be enforced even if a court "is convinced that the arbitration panel made the wrong call on the law," as long as there is a barely colorable basis for the decision (*Wallace v Buttar*, 378 F3d 182, 190 [2d Cir 2004]).[1] The "Statement" of the panel provides such a basis.[2]

Finally, the arbitrators did not exceed their authority. The question of whether they exceeded their authority "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue" (*DiRussa v Dean Witter Reynolds, Inc.*, 121 F3d 818, 824 [2d Cir 1997], *cert denied* 522 US 1049 [1998]). The arbitrators' interpretation of the issues and the scope of their authority is accorded substantial deference, and this Court will not overturn the decision unless there is no support at all justifying the decision (*United Transp. Union Local 1589 v Suburban Tr. Corp.*, 51 F3d 376, 379 [3d Cir 1995]). In this case, both parties argued

---

1. Furthermore, this Court may not review the evidentiary record for any purpose other than to discern whether a colorable basis exists for the award (*Wallace*, 378 F3d at 193). There is no review for "manifest disregard of the evidence" and the award must be confirmed if there is such a colorable justification even if it is based upon an error of fact or law (*id.*).

2. Indeed, an arbitrator's "improvident, even silly, factfinding" does not provide a basis to refuse to enforce the award (*United Paperworkers Intl. Union, AFL-CIO v Misco, Inc.*, 484 US 29, 39, [1987]).

this issue of petitioners' individual claims to the panel. Indeed, respondent specifically argued that Mr. Roffler could not maintain a private cause of action nor receive an "affirmative award." Moreover, as noted by the arbitrators in making the award, the issue as to whether petitioners were entitled to damages was specifically submitted to the panel by this Court's prior determination (291 AD2d at 256). Furthermore, there is no contention that the dispute was not covered by the arbitration agreement. Thus, the arbitrators were acting within the scope of their authority when considering whether to grant petitioners affirmative relief. The decision to do so was based upon a factual determination that will not be disturbed. Concur—Ellerin, Lerner and Catterson, JJ.

Tom, J.P., dissents in a separate memorandum as follows: Under the law of the case doctrine, I am constrained to dissent in favor of vacating the award and remanding the matter to a new arbitration panel for rehearing. Nevertheless, I consider the disposition of the previous appeal to be an infringement upon the prerogative of the arbitrators to render an equitable determination, free of judicial interference. Furthermore, it does not appear that any party established that the propriety of the arbitral award must be determined with reference to federal law.

This Court decided that the panel's prior award was in " 'manifest disregard' of the law" and, consequently, irrational (*Matter of Spear, Leeds & Kellogg v Bullseye Sec.*, 291 AD2d 255, 256 [2002], quoting *Halligan v Piper Jaffray*, 148 F3d 197, 204 [2d Cir 1998], *cert denied* 526 US 1034 [1999]). Our ruling that the award of corporate damages to the individual share owners is offensive to federal arbitration principles cannot simply be explained away in disregard of the spirit and letter of our decision (*see Atlantic Mut. Ins. Co. v Greater N.Y. Mut. Ins. Co.*, 271 AD2d 278, 280 [2000] [parties are bound by prior appellate holding]). While the remand order is hardly a model of clarity, the decision explicitly states that "individual claimants, as a matter of law, cannot assert a cause of action to recover for wrongdoing done to a corporation" (291 AD2d at 256). On remand, by stipulation of the parties, the arbitrators conducted no further proceedings; they merely added an explanation for their determination to the award. The stated justification is that Pasquale Schettino, a partner in respondent Spear, Leeds & Kellogg (SLK), "guaranteed that any losses incurred by Joseph and Eva Roffler would be made good by SLK," and that "the failure of SLK to supervise Schettino's activities was the cause of the losses sustained."

That the losses may have been incurred due to the brokerage firm's failure to supervise Schettino and that its partner may have made a promise to petitioners does not detract from the acknowledged fact that the losses are those of their corporation, Bullseye Securities, and not its shareholders. The "derivative injury rule" bars "piercing the corporate veil in reverse in order to recover individually for [corporate] losses" (*In re Kaplan*, 143 F3d 807, 812 [3d Cir 1998], citing *Kagan v Edison Bros. Stores*, 907 F2d 690 [7th Cir 1990]). Petitioners elected the benefits of the corporate form, and the law requires them to respect it (*see Avon Bard Co. v Aquarian Found.*, 260 AD2d 207, 212 [1999], *appeal dismissed* 93 NY2d 998 [1999]).

What is disturbing about this outcome is that it offends the rule that "[c]ourts are generally prohibited from vacating an arbitration award on the basis of errors of law or interpretation" (*O.R. Sec., Inc. v Professional Planning Assoc., Inc.*, 857 F2d 742, 746 [11th Cir 1988]). This state has always had a "strong public policy of encouraging, by judicial noninterference, an unfettered, voluntary arbitration system, where equity should be done" (*Matter of Neirs-Folkes, Inc. [Drake Ins. Co.]*, 75 AD2d 787, 788 [1980], *affd* 53 NY2d 1038 [1981]). Unless it is offensive to public policy, an arbitration award is "impervious to judicial review" (*Matter of Hirsch v Hirsch*, 37 NY2d 312, 316 [1975]). Judicial intervention in the arbitral process is inappropriate unless the relevant public policy considerations "prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator" (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631 [1979]). Therefore, an arbitrator's award "will not be vacated even though the court concludes that his interpretation of the agreement misconstrues or disregards its plain meaning or misapplies substantive rules of law, unless it is violative of a strong public policy, or is totally irrational, or exceeds a specifically enumerated limitation on his power" (*Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308 [1984]).

Unless a corporation is merely an alter ego of its principal, a *court* may not pierce the corporate veil for the purpose of compelling an individual to proceed to arbitration (*TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335, 339-340 [1998]). Once it is determined that a party is bound by an arbitration provision, however, public policy does not bar an *arbitrator* from disregarding the corporate form where there is a rational basis for doing so (*see Habitations Ltd. v BKL Realty Sales Corp.*, 169 AD2d 657 [1991]; *Matter of Minkoff [H & L Dress Corp.]*, 10 Misc 2d 828 [1958]). Even if the award in this matter violates the deriv-

ative injury rule (*Kaplan*, 143 F3d at 812), it represents merely an error of law or interpretation (*O.R. Sec.*, 857 F2d at 746; *Matter of Silverman*, 61 NY2d at 308).

The manifest disregard standard is not found in any federal statute but arose from federal case law. As the Second Circuit Court of Appeals stated in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v Bobker* (808 F2d 930, 933-934 [2d Cir 1986]), " '[m]anifest disregard of the law' by arbitrators is a judicially-created ground for vacating their arbitration award, which was introduced by the Supreme Court in *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953). It is not to be found in the federal arbitration law. 9 U.S.C. § 10. Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties. Judicial inquiry under the 'manifest disregard' standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it" (citations omitted). The United States Supreme Court has narrowly circumscribed the use of the doctrine: "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision" (*United Paperworkers Intl. Union, AFL-CIO v Misco, Inc.*, 484 US 29, 38 [1987]).

Because arbitration is a creature of contract, the parties are generally free to designate the law and procedure to be applied to their controversy. Thus, it would appear that an arbitration agreement would have to specify that federal law will govern before a state court is required to apply the manifest disregard criterion in assessing the propriety of an award (*Matter of Smith Barney Shearson v Sacharow*, 91 NY2d 39, 49 [1997]; *cf. Wien & Malkin LLP v Helmsley-Spear, Inc.*, 12 AD3d 65 [2004]). It is simply too broad to state, as the IAS court did, that "[i]t is well settled that securities industry disputes are covered by the

Federal Arbitration Act." That statute (9 USC § 1 *et seq.*) is not intended to preempt the field of arbitration (*Volt Info. Sciences, Inc. v Board of Trustees of Leland Stanford Jr. Univ.*, 489 US 468, 478 [1989]), and the parties are free to designate, in their contract, the law and procedure to govern the resolution of any dispute (*Matter of Smith Barney, Harris Upham & Co. v Luckie*, 85 NY2d 193, 201 [1995], *cert denied sub nom. Manhard v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 516 US 811 [1995]). Only where it is demonstrated that New York law is in conflict with the terms or policies promulgated in the Federal Arbitration Act (FAA) is it necessary to defer to the federal statute (*id.*). Where the conflict is thus placed in issue, "the dispositive inquiry . . . is whether application of New York arbitration law . . . 'undermine[s] the goals and policies of the FAA' " (*id.* at 204, quoting *Volt Info. Sciences*, 489 US at 478).

It does not appear that the question of what law is to be applied to this dispute has been preserved for review. The parties have not included their arbitration agreement in the record, and it is not clear that it expressly provides that arbitration is to be conducted pursuant to the Federal Arbitration Act (*cf. Citizens Bank v Alafabco,* 539 US 52 [2003])* and pursuant to federal law.

The Federal Arbitration Act requires that courts honor an arbitration provision contained in a contract. Whether the law of the jurisdiction is required to defer to federal law involves a determination of whether the local law conflicts with the policy underlying the federal statute. It does not appear that any such analysis preceded the IAS court's invocation of the federal manifest disregard criterion to vacate the award in this case. Therefore, it would seem that the award should have been assessed under substantive New York law (*see Mastrobuono v Shearson Lehman Hutton, Inc.*, 514 US 52, 56-64 [1995]). While the award in this case might be unusual in view of the arbitrators' broad resort to equity in disregarding the corporate form, their determination is not without logic. Thus, the award is not

---

* It should be noted that *Alafabco* stands for the narrow proposition, long recognized in this jurisdiction, that the courts should respect and enforce arbitration clauses contained in contracts rather than require the parties to litigate in a judicial forum (*id.* at 55-56; *see Matter of Smith Barney, Harris Upham & Co.*, 85 NY2d at 204-205). The strong public policy of this state encourages the arbitration of disputes and dissuades "parties to such agreements from using the courts as a vehicle to protract litigation" (*Matter of Weinrott [Carp]*, 32 NY2d 190, 199 [1973]). Therefore, federal and New York policy are harmonious in resolving questions regarding the scope of arbitrable issues in favor of arbitration (*see Singer v Jefferies & Co.*, 78 NY2d 76, 81-82 [1991]).

irrational and should not have been disturbed (*see Matter of Brown & Williamson Tobacco Corp. v Chesley*, 7 AD3d 368, 372 [2004]).

The foregoing analysis notwithstanding, no appeal was taken from this Court's previous decision that the arbitrators exceeded their authority by making an award to petitioners, individually, as compensation for respondent's wrongdoing to their corporation. That ruling remains law of the case and binds this Court as well as the parties (*see Matter of Wynyard v Beiny*, 228 AD2d 265, 267 [1996]). No new evidence has been adduced that might support the imposition of liability upon respondent for petitioners' individual losses. Therefore, the latest award, which contravenes this Court's prior order, should be vacated and the matter remanded for a new determination consistent therewith.

Williams, J., dissents in a separate memorandum as follows: This Court held, in affirming the vacatur of the initial arbitration award in this matter, that the arbitrators' award, which, without explanation, provided monetary relief to individual claimants for damage suffered by a corporation, was made in manifest disregard of the law by an arbitration panel that exceeded its authority (*Matter of Spear, Leeds & Kellogg v Bullseye Sec.*, 291 AD2d 255 [2002]).

The arbitrators' subsequent rendering, presently before us, of an identical award with a cursory explanation of their reasoning, is not sufficient to cure the award's essential fault, namely, that it directly compensates individual shareholders for the claims of a corporation in what can only be viewed as a blatant disregard of the law. The panel's reliance on this explanation in support of an award to petitioners not only evidences, at best, a grievous misinterpretation of our earlier decision, but ignores the fact that both this Court and the IAS court clearly rejected the same explanation, and others, when offered by petitioners earlier in this litigation as a possible rationale for such an award. Under these circumstances, such explanation "strain[s] credulity" and demonstrates manifest disregard of the law (*Halligan v Piper Jaffray, Inc.*, 148 F3d 197, 204 [2d Cir 1998], *cert denied* 526 US 1034 [1999]). Moreover, although we held in the prior appeal that remand was proper because "the panel exceeded its authority by granting relief on claims not asserted in the amended statement of claim," and ordered "a new hearing on the issue of whether the Rofflers are entitled to compensatory damages" (*Matter of Spear, Leeds & Kellogg v Bullseye Sec.*, 291 AD2d 255, 256 [2002]), upon remand, neither appropriate claim was added on petitioners' behalf (*see Matteson v Ryder Sys. Inc.*, 99 F3d 108, 112-113 [3d Cir 1996]) nor

were any further substantive proceedings held. While Supreme Court correctly vacated the amended award as violative of public policy for summarily disregarding the corporate claimant so as to bestow a monetary benefit upon its nonclaimant shareholders, the award should be vacated upon the additional grounds that the reconvened panel manifestly disregarded the law (*see Matter of UBS Warburg [Auerbach, Pollack & Richardson]*, 294 AD2d 245 [2002], *lv denied* 100 NY2d 504 [2003]; *Halligan v Piper Jaffray, Inc.*, 148 F3d 197 [1998]), and upon the ground that the panel overtly failed to comply with our binding directives (*Sands Bros. & Co. v Generex Pharm.*, 298 AD2d 307 [2002]). Thus, I would remand this matter to a new panel of arbitrators.