OPINION OF THE COURT
Renwick, J.
Petitioner, a stock trader, commenced this CPLR article 75 proceeding to challenge an award rendered against her by the Financial Industry Regulatory Authority (FINRA), after a protracted arbitration proceeding. Petitioner claims that the arbitrators ruled on a matter not submitted to them by finding her jointly and severally liable with her former employer. Respondent investors crossed-moved to confirm the award. Supreme Court denied the petition and confirmed the award, finding petitioner had not demonstrated that the arbitration panel exceeded the scope of its authority (2009 NY Slip Op 31216[U]).
Petitioner was a technology-oriented trader for Goldman Sachs from 1994 to 2000. In 1999, the Sardis respondents and a related holding corporation, JAS, invested about $19 million with her. Petitioner left Goldman Sachs and went to Lehman Brothers in 2000, and these investors followed her. In May 2004, however, the investors commenced an arbitration before FINRA’s predecessor, the National Association of Securities Dealers or NASD, against petitioner, Goldman Sachs and Lehman Brothers. In a 44-page statement of claim, the investors detailed the *138 wrongs allegedly committed against them by petitioner and the investment firms. In essence, the investors claimed they lost approximately $9.6 million through fraudulent “churning” activities undertaken by petitioner, in which the firms were complicit.
Churning refers to the excessive buying and selling of securities in an account by a broker, for the purpose of generating commissions and without regard to the client’s investment objectives. For churning to occur, the broker must exercise control over the investment decisions in the account, either through a formal written discretionary agreement or otherwise. In this case, the investors claimed that petitioner used, among other things, “false representations and fraudulent charts purporting to show the outstanding past performances of her customer accounts,” to obtain complete discretionary control over them. Then, in contravention of her customers’ investment objectives, petitioner allegedly “overtraded on high margin, charging [improperly] high commissions, markups/markdowns and other costs.”
The investors sought to hold Goldman Sachs and Lehman Brothers vicariously liable for petitioner’s negligent and fraudulent activities, as well as for the firms’ own acts of negligence, because their supervisors “had to know she was engaged in improper activity which they failed to properly supervise and curtail.” Thirty-seven hearings were held over a period of two years. Substantial evidence was offered to indicate petitioner’s alleged wrongdoing while employed by both firms, including, as applicable here, acts that occurred while working for Lehman Brothers. The panel found Goldman Sachs and petitioner jointly and severally liable for $1 million in compensatory damages, and Lehman Brothers and petitioner jointly and severally liable for $2.5 million in compensatory damages.
Petitioner commenced this proceeding in November 2008 to modify or vacate the award. The investors opposed the petition and cross-moved to confirm the award. Petitioner contended that the panel’s finding of joint and several liability with Lehman Brothers should be vacated because the investors never sought such recovery in their statement of claim. Specifically, petitioner refers to the “damages” clause in which the investors sought various categories of money damages “against Goldman Sachs and Frankel, jointly and severally.” In the next paragraph, respondents delineated several categories of loss “against Lehman Brothers.” There was no demand in the damages clause for joint and several recovery against petitioner and Lehman Brothers, as there was against petitioner and Goldman Sachs.
*139 The investors countered that petitioner’s misfeasance while employed at Lehman Brothers was outlined in the demand for arbitration and was forcefully explored throughout the hearings, so all parties were well aware that petitioner would be implicated in any liability found against Lehman Brothers. Supreme Court found that even though the issue of joint and several liability with Lehman Brothers was not initially pleaded in the damages clause, the issue was fully argued and defended by petitioner, who was aware from the outset that she was a target in the arbitration. It thus found that the arbitrators had not exceeded their authority, denied the petition to vacate or modify, granted the cross motion to confirm, and dismissed the proceeding. Petitioner appeals.
It is a bedrock principle of arbitration law that the scope of judicial review of an arbitration proceeding (see CPLR 7511 [b], [c]) is extremely limited (see Matter of Silverman [Benmor Coats], 61 NY2d 299 [1984]; Azrielant v Azrielant, 301 AD2d 269 [2002], lv denied 99 NY2d 509 [2003]). Indeed, “[c]ourts are reluctant to disturb the decisions of arbitrators lest the value of this method of resolving controversies be undermined” (Matter of Goldfinger v Lisker, 68 NY2d 225, 231 [1986]; see also Matter of Kern v Krackow, 309 AD2d 650 [2003], lv denied 1 NY3d 505 [2004] [judicial intervention would contravene strong public policy of this State in favor of resolving disputes in arbitration as a means of conserving scarce judicial resources]). Accordingly, an award will not be overturned “unless it is violative of a strong public policy, or is totally irrational, or exceeds a specifically enumerated limitation on [the arbitrator’s] power” (Silverman, 61 NY2d at 308; Matter of Board of Educ. of Dover Union Free School Dist. v Dover-Wingdale Teachers’ Assn., 61 NY2d 913 [1984]).
The only ground advanced to overturn the award here is that the arbitration panel exceeded its authority by finding petitioner jointly and severally liable with her former employer Lehman Brothers.[1] Because arbitration is a creature of contract, the question of whether the panel exceeded its authority “focuses on whether the arbitrators had the power, based on the parties’ submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue” (DiRussa v Dean Witter Reynolds Inc., 121 F3d 818, 824 [2d Cir *140 1997], cert denied 522 US 1049 [1998]; see also Integrated Sales v Maxell Corp. of Am., 94 AD2d 221, 224 [1983]). The arbitrators’ interpretation of the issues and the scope of their authority is accorded substantial deference, and courts will not overturn that decision unless there is absolutely no justification for it (see Matter of Roffler v Spear, Leeds & Kellogg, 13 AD3d 308, 310-311 [2004]; United Transp. Union Local 1589 v Suburban Tr. Corp., 51 F3d 376, 379 [3d Cir 1995]). Therefore, the party seeking to upset an arbitration award bears a heavy burden (see Lehman Bros., Inc. v Cox, 10 NY3d 743 [2008]; North Syracuse Cent. School Dist. v North Syracuse Educ. Assn., 45 NY2d 195, 200 [1978]).
We find that petitioner has failed to meet this heavy burden. As noted above, petitioner argues that the scope of the arbitrators’ power was limited by the damages clause of the statement of claim. To be sure, such clause, if viewed in isolation, creates confusion as to whether respondents were seeking damages against petitioner jointly and severally with Lehman Brothers, as there was no paragraph in that clause for a joint and several recovery against these two parties, as there was against petitioner and Goldman Sachs.
Such apparent inconsistency is insufficient to vacate the award against petitioner for joint and several liability with Lehman Brothers. The language of arbitration demands is not subject to the strict standards of construction applicable to formal court pleadings (Kurt Orban Co. v Angeles Metal Sys., 573 F2d 739, 740 [2d Cir 1978]; see also Roffler, 13 AD3d at 310). Rather, “[i]f the allegations underlying the claims ‘touch matters’ covered by the parties’ . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them” (Genesco, Inc. u T. Kakiuchi & Co., Ltd., 815 F2d 840, 846 [2d Cir 1987]).
Initially, it should be pointed out that the lengthy details in the statement of claim were clearly directed at petitioner’s own negligent and fraudulent conduct, including her period at Lehman Brothers. Moreover, there is no contention that the issue of petitioner’s potential joint and several liability with Lehman Brothers was not covered by the arbitration agreement. Nor does petitioner contend that there is no proper basis for the award against her personally, since it was her own active negligence and fraud that formed the basis of all the claims before the arbitration panel, including both investment firms (see Wall St. Assoc., L.P. v Becker Paribas Inc., 27 F3d 845, 849 *141 [2d Cir 1994] [“where a party claims the arbitrators based their holding on a claim not properly before the panel, the party challenging the award must show that no proper basis for the award can be inferred from the facts of the case”]).
Under the circumstances, it is inconceivable that the investors intended petitioner to be free of any liability. It bears repeating that during the arbitration proceedings, the investors submitted evidence and argued about petitioner’s own negligent and fraudulent conduct resulting in their losses. In addition, contrary to their current allegations, petitioner and her Lehman counsel clearly understood that the investors sought to hold her liable, which is why her counsel identified her as a respondent throughout the arbitration proceedings, and not merely as a witness. Likewise, at the end of the evidentiary phase of the arbitration, counsel moved to dismiss the claims asserted against “respondents,” not just Lehman Brothers.[2]
In short, the arbitrators here were acting within the scope of their authority when considering whether to grant the investors affirmative relief against petitioner jointly and severally with her former employer, Lehman Brothers. The decision to do so was based upon a factual determination that should not be disturbed. To hold otherwise would unnecessarily elevate form over substance and preclude an otherwise meritorious arbitration award merely because the damages clause in the statement of claim asserted damages against Lehman Brothers alone, without including petitioner.
Petitioner’s reliance on Roffler (13 AD3d 308 [2004]) is unpersuasive, as it actually supports the investors’ position. That case involved a dispute between Bullseye Securities, a broker-dealer, and Spear, Leeds & Kellogg (SLK), a limited partnership in the business of providing securities clearing for broker-dealers. The securities clearing services between SLK and Bullseye allowed the former to open accounts for the latter under its master account. Bullseye claimed that SLK engaged in unauthorized trading, which caused Bullseye to sustain losses and led to its liquidation. The arbitration panel found SLK liable and awarded Joseph and Eva Roffler, the owners of Bullseye, $1.25 million in compensatory damages.
*142 On the first appeal, this Court upheld Supreme Court’s grant of SLK’s motion to vacate that portion of the award directing payment to the Rofflers personally (Matter of Spear; Leeds & Kellogg v Bullseye Sec., 291 AD2d 255, 256 [2002]), because the panel had exceeded its authority by granting relief on claims not asserted in the statement of claim. Specifically, the panel had awarded damages to the individual petitioners even though they had made only derivative claims on behalf of their corporation. We found that even if the statement of claim could also be viewed as an assertion of individual claims, the individual claimants were barred from an award as a matter of law, and thus the award, made without explanation, was properly vacated as in “manifest disregard” of the law (id.).[3]
Upon remand, the arbitration panel granted the same award, but explained that it had found the corporation responsible for the actions of its partner because the partner had guaranteed the petitioners that any losses they incurred would be “made good” by the respondent corporation (Roffler, 13 AD3d at 311). Supreme Court granted a motion to vacate, but on the second appeal, we reversed, based on a factual finding that the explanation was sufficient to cure the previous defects in the panel’s award (id. at 309).
As the foregoing illustrates, nothing in Roffler compels us to vacate the award. Indeed, in the second appeal, this Court did not find it significant that the statement of claim had asserted damages on behalf of the corporation (Bullseye) rather than the Rofflers personally. Consistent with our view in the instant case, that the language of arbitration demands is not subject to the strict standards of construction applicable to formal court pleadings, we found in Roffler that the issue was undisputedly within the parameters of the arbitration agreement, and was in fact addressed during the course of the arbitration proceeding (13 AD3d at 310-311):
“In this case, both parties argued this issue of petitioners’ individual claims to the panel. Indeed, respondent specifically argued that Mr. Roffler could not maintain a private cause of action nor receive an ‘affirmative award.’ Moreover, as noted by the arbitrators in making the award, the issue as to *143 whether petitioners were entitled to damages was specifically submitted to the panel by this Court’s prior determination.”
Accordingly, the judgment of the Supreme Court, New York County (Emily Jane Goodman, J.), entered July 22, 2009, to the extent appealed from, confirming arbitration awards against petitioner and respondent Lehman Brothers in favor of respondents Jeffrey Sardis, Lauren Sardis and JAS Holding in the principal sums of $600,000, $600,000 and $1,300,000, respectively, and dismissing this proceeding to modify the awards as to joint and several liability, should be affirmed, with costs.
Saxe, J.P., Catterson, Richter and Abdus-Salaam, JJ., concur.
Judgment, Supreme Court, New York County, entered July 22, 2009, affirmed, with costs.

. A finding of joint and several liability means petitioner would be responsible for the full amount of the damages award because Lehman Brothers has filed for bankruptcy.

. Petitioner also amended her Form U-4 (Uniform Application for Securities Industry Registration or Transfer) so as to disclose that these investors had asserted a claim against her for losses incurred during her employment with Lehman Brothers.

. We also found that the award was irrational, since it was granted against a corporation on derivative claims asserted against its partner, where all claims against that partner had been dismissed.