**ASTURIANA DE ZINC MARKETING, INC., f/k/a Austmet, Inc., Petitioner,**

v.

**LASALLE ROLLING MILLS, INC., Respondent.**

**No. 97 CIV. 6053 (JSR).**

United States District Court, S.D. New York.

Sept. 29, 1998.

Kevin Conway, New York City, for Petitioner.

Paula Jacobi, Patrick Rohan, New York City, for Respondent.

## MEMORANDUM ORDER

RAKOFF, District Judge.

In law, as in medicine, there are many nostrums but no panaceas. Ironically, the vaunted informality of arbitration may invite the arbitrator to be arbitrary—for who will ever know the difference? Still, businesses know what they are getting when they agree to arbitrate and cannot be heard to complain unless the results plainly manifest disregard of law and reason. In the instant case, two components of an arbitration award fail to survive even this modest scrutiny, but the rest pass muster.

The issue comes before this Court upon the petition of Asturiana De Zinc Marketing, Inc. ("Asturiana"), which sells and trades metals, to confirm an arbitration award of $359,534.62 against LaSalle Rolling Mills, Inc. ("LaSalle"), which manufactures metal products. LaSalle, in turn, seeks to vacate or modify the award.

The dispute that was the subject of the arbitration concerns LaSalle's alleged failure to promptly pay Asturiana for several deliveries of zinc. Under each contract, LaSalle was obligated to make payment to Asturiana thirty days after delivery, and interest on late payments was assessed at the published prime rate plus 2%. Each of these contracts also contained the following arbitration clause:

> Any dispute relating to or arising out of this sale shall be submitted to arbitration before the American Arbitration Association in New York City and shall be subject to the substantive laws of New York State without reference to conflict of law principles.

Over the course of several years, LaSalle repeatedly failed to make full payments on time, but made periodic partial payments. When the parties were unable to resolve how much was still due, the matter was referred to a duly appointed arbitrator of the American Arbitration Association ("AAA"), who conducted an evidentiary hearing on June 18, 1997. No contemporaneous record was made of the hearing, and the parties have submitted varying sworn accounts of what occurred and of what arrangements were made for post-hearing submissions. It is undisputed, however, that Asturiana's post-hearing submission recalculated the amount of principal and interest previously demanded and requested an award of $223,262.92 principal and $15,747.70 interest, an increase of more than $30,000 over the amount Asturiana had requested at the hearing. Asturiana's post-hearing submission also altered its method of calculating contango charges[1] and thereby

---

1. "Contango" charges, standard in metal futures markets, take into account storage and carrying charges incurred by sellers in periods of glut. Apparently the zinc market was "in a contango" during the periods in question.

slightly increased its claim for such charges from $55,524.00 to $56,904.40. In response to these recalculations, LaSalle sent a letter to the arbitrator on July 3, 1997, objecting to any consideration of Asturiana's post-hearing submission on the ground that all evidence should have been submitted at the hearing and that LaSalle was denied the opportunity to cross-examine anyone about Asturiana's increased claims.

The Arbitration Award issued on August 6, 1997. The arbitrator accepted Asturiana's recalculated claims for principal and interest, awarding $223,262.92 for "product delivered and unpaid" and $15,747.70 for "interest on amount due for the periods ending June 30, 1997." However, the arbitrator rejected the recalculation of the contango charges and awarded the originally-requested $55,524.00 for such charges. Finally, the arbitrator awarded Asturiana $65,000.00 in attorneys' fees, resulting in a total award of $359,-534.62.[2] This action followed.

Under the Federal Arbitration Act, 9 U.S.C. §§ 1–16, the Court's "function in confirming or vacating an arbitration award is severely limited" so that the "ostensible purpose for resort to arbitration, i.e., avoidance of litigation, [is not] frustrated." *Synergy Gas Co. v. Sasso*, 853 F.2d 59, 63 (2d Cir. 1988) (citation and internal quotation marks omitted). However, there are several statutory and judge-made grounds for vacating or modifying an arbitration award, and LaSalle invokes many of them, claiming that the arbitrator "exceeded [his] powers," 9 U.S.C. § 10(a)(4), was guilty of "manifest disregard of the law," *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 1998 WL 385539 (2d Cir.1998), made an "evident material miscalculation of figures" and "awarded upon a matter not submitted to him," 9 U.S.C. § 11(a)-(b), and "refus[ed] to hear evidence pertinent and material to the controversy" or engaged in "other misbehavior by which [respondent's] rights ... have been prejudiced," *id.*

§ 10(a)(3). LaSalle's contentions will be considered separately with respect to (a) principal and interest, (b) contango charges, and (c) attorneys' fees.

*Principal and Interest.* LaSalle's argument for modifying or vacating the arbitrator's award of principal and interest centers on his acceptance of Asturiana's new calculations after the hearing, when LaSalle lacked an opportunity to cross-examine or to present new evidence. According to LaSalle, in permitting this irregular procedure the arbitrator exceeded his powers and violated Rule 31 of the AAA's Commercial Arbitration Rules, which requires that "all evidence shall be taken in the presence of all of the arbitrators and all of the parties."

However, AAA Rule 32 permits the arbitrator to direct "that documents or other evidence be submitted to the arbitrator after the hearing" as long as "[a]ll parties [are] afforded an opportunity to examine such documents or other evidence." Additionally, under AAA Rule 36, a hearing may be reopened at the arbitrator's initiative.

Therefore, the real question is not whether the arbitrator violated his own organization's rules of fair play but rather whether he violated fundamental rules of due process. "[A]lthough not required to hear all the evidence proffered by a party, an arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and argument. Federal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir.1997); *see also Konkar Maritime Enterprises, S.A. v. Compagnie Belge D'Affretement*, 668 F.Supp. 267, 271 (S.D.N.Y.1987) ("All parties in an arbitration proceeding are entitled to notice and an op-

---

**2.** The arbitrator also provided that "interest shall continue to run on the unpaid [principal] amount of $223,262.92 from June 30, 1997 to the date this amount is paid in full, or until the Award is entered as a judgment in a court of competent jurisdiction," and that "[i]nterest on the [contango] amount of $55,524.00 shall run from October 1, 1994" to the date the amount is paid in full or

judgment entered—with all such interest to be computed at the prime rate reported in the Wall Street Journal plus 2% and with partial payments to be applied first to interest and then to principal. Finally, the arbitrator ordered LaSalle to bear various costs relating to the compensation of the arbitrator and the administrative fees and expenses of the AAA.

portunity to be heard." (citation and internal quotation marks omitted)).

■ Regardless of which party's view of what the arbitrator ordered to be submitted after the hearing is the correct one, the Court does not discern any fundamental unfairness or "misbehavior by which the rights of [the respondent] have been prejudiced," 9 U.S.C. § 10(a)(3), in the procedure followed here with respect to the award of principal and interest. The new amounts of principal and interest proposed by Asturiana after the hearing were not based on new evidence: they were old evidence simply subjected to a new mathematical calculation, a calculation that the arbitrator presumably could have performed on his own. Further, the evidence of a contrary prior custom of the parties in calculating such charges that LaSalle claims it would have submitted in response to the new calculations was largely already before the arbitrator at the hearing. Accordingly, there is no basis for vacatur or modification on this ground.[3]

*Contango Charges.* Even though the arbitrator did not accept Asturiana's post-hearing recalculation of the contango charges, the amount of contango charges awarded must be modified downward on the basis of an "evident material miscalculation of figures" and an award on a "matter not submitted" to the arbitrator. 9 U.S.C. § 11(a)-(b). At the hearing, Asturiana claimed that LaSalle owed $55,524.00. In response, LaSalle pointed out some mathematical errors in Asturiana's calculations and called the arbitrator's attention to the fact that $1,890.00 of the amount requested was based on a shipment under a contract that was not part of the arbitration, a point that was explicitly conceded by Asturiana in its post-hearing submission. These errors are also apparent to the Court on the face of Asturiana's exhibit

setting forth its method of calculating contango charges.

Since the arbitrator's award otherwise matches the flawed amount to the dollar, it must be modified to $51,604.00, the amount yielded when these flaws are corrected.

■ Asturiana cannot avoid this result through reliance on its post-hearing submission, in which it argued that the obvious mathematical errors were actually the result of "a simplified system in the effort of fairness to encompass the costs of Asturiana while minimizing the burden on LaSalle" and that a more fine-tuned approach would actually entitle it to contango charges of $56,904.40. Jacobi Dec. Exh. 5. First, the arbitrator did not adopt the new amount that Asturiana suggested. Second, even were there some remotely plausible possibility that the arbitrator considered the new contango calculations but capped his award at the amount previously requested, such a methodology would endanger respondent's right to fundamental procedural fairness. Unlike Asturiana's post-hearing calculation of principal and interest, which merely subjected old evidence to a new mathematical formula, Asturiana's post-hearing contango calculations applied a new mathematical formula to a combination of both old and new evidence, including contango charges on shipments that were never mentioned in its initial contango request—and that respondent thus never had an opportunity to challenge.

*Attorneys' Fees.* The focus of LaSalle's objections to the arbitrator's award of $65,000 in attorneys' fees does not relate to the calculation of the amount but rather to whether the arbitrator's awarding any attorneys' fees constituted "manifest disregard" for substantive New York law. This in turn raises two issues.

---

**3.** LaSalle also claims that the arbitrator showed "manifest disregard of the law" by not giving force to an alleged executory accord between the parties that allowed LaSalle to pay its debts at a rate of $4,000 a month. This argument fails, because although LaSalle attempts to prove that executory accords are valid and must be materially breached before a party's pre-settlement claims may be sued upon, *see* Defendant's Memo-

randum of Law at 19–20, there is no question that an arbitrator applying the legal principles that LaSalle urges could, as a factual and evidentiary matter, have declined to find that the alleged accord created the kind of agreement that LaSalle suggests it did. *See* Jacobi Dec. Exh. 7; *see generally Halligan,* 148 F.3d 197, 201 (defining "manifest disregard").

The first is whether an arbitrator, acting pursuant to a contractual agreement that contains the above-quoted arbitration clause invoking New York law, has the power to award attorneys' fees at all, since a New York arbitrator would normally be precluded from awarding such fees. *See* N.Y. C.P.L.R. § 7513 (stating that attorneys' fees shall not be awarded in arbitration unless provided for in the agreement to arbitrate). Although the matter is hardly free from doubt, the Court does not reach this issue but instead assumes *arguendo*, for purposes of this decision, that the arbitrator had such power in this case. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir.1996) ("[A] choice of law provision will not be construed to impose substantive restrictions on the ... right to arbitrate claims for attorneys' fees."); *see generally Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).[4]

However, even if the above-quoted clause does not, by operation of New York law, deprive the arbitrator of the power of determining whether to award attorneys' fees, that determination, both sides here agree, must still be made in accordance with the principles of New York substantive law regarding when such an award is warranted. In other words, the AAA arbitrator here is assumed to have the same power as a New York Court (as opposed to a New York arbitrator) to award attorneys' fees, but must still make that determination in accordance with the substantive law such a court would apply. *See generally Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). Indeed, both *PaineWebber* and *Mastrobuono* specifically acknowledge that, while the federal presumption in favor of arbitrability (along with certain other factors) trumps the application of New York's "special rules limiting the authority of the arbitrators" when the New York choice-of-law agreement does not specifically provide for the application of such special rules, the choice-of-law provision nevertheless "encompass[es] substantive principles that New York courts would apply." *Mastrobuono*, 115 S.Ct. at 1219; *see also PaineWebber*, 81 F.3d at 1200.

■ In regard to these substantive principles, New York follows the prevailing "American Rule" on fee-shifting, permitting an award of fees only where "specifically provided for by statute or contract." *Marotta v. Blau*, 241 A.D.2d 664, 659 N.Y.S.2d 586, 586 (3d Dep't 1997); *see Orlowski v. Koroleski*, 234 A.D.2d 436, 651 N.Y.S.2d 137, 137 (2d Dep't 1996) (stating that generally attorneys' fees may not be awarded "unless an award is authorized by express agreement between the parties, by statute, or by court rule"); *Bank of New York v. Fleet Bank, N.A.*, 176 Misc.2d 21, 671 N.Y.S.2d 945, 948 (Sup.Ct. N.Y.Cty.1998) (stating that "the court should not infer a party's intention to waive the benefit of the [fee] rule unless the intention to do so is unmistakenly [sic] clear from the language of the promise" (internal quotation marks omitted)); *see also Grand Union Co. v. Cord Meyer Development Co.*, 761 F.2d 141, 147 (2d Cir.1985)(stating that New York state law "requires, in the absence of an

---

**4.** The Court notes, however, that *Mastrobuono*, on which *PaineWebber* was based, dealt with punitive damages rather than attorneys' fees. Arguably, the equitable consideration behind the *Mastrobuono* decision—that interpreting a New York choice of law provision to incorporate a New York rule forbidding awards of punitive damages by arbitrators would in effect force petitioners to give up an "important substantive right" based on a rule that they were probably unaware of, *Mastrobuono*, 115 S.Ct. at 1219—is not applicable in the attorneys' fees context, where the normal expectation under the "American Rule" is that fees will not be awarded. *See PaineWebber, Inc. v. Richardson*, 1995 WL 236722, at *4 (S.D.N.Y.1995); *Sammi Line Co., Ltd. v. Altamar Navegacion S.A .*, 605 F.Supp. 72, 74 (S.D.N.Y.1985). It is also arguable that the above-quoted integrated arbitration and choice-of-law provision in this case creates less ambiguity about the parties' intent to apply New York arbitration law than the separate provisions that were at issue in *Mastrobuono, see Mastrobuono*, 115 S.Ct. at 1216–17 & n. 2; *cf. Insurance Co. of North America v. ABB Power Generation, Inc.*, 925 F.Supp. 1053, 1058 (S.D.N.Y.1996), especially if the provision is construed against the drafter, here petitioner, *see PaineWebber*, 81 F.3d at 1199.

agreement among the parties, statutory authorization for such an award").

■ Here, there clearly is no agreement among the parties that attorneys' fees may be awarded. The *jurisdictional* agreement to submit "[a]ny dispute" to arbitration is clearly not equivalent to a *substantive* agreement that states that attorneys' fees may be awarded to the prevailing party or something along those lines. The reference in the parties' agreement to arbitration before the AAA is also not a sufficient contractual basis for an award of fees, because although AAA Rule 43 allows arbitrators to grant "any remedy or relief that the arbitrator deems just and equitable *and* within the scope of agreement of the parties" (emphasis added), this Rule merely "refers back to the parties' contract and limits the scope of the arbitrator['s] authority to the contract's express terms." *In Matter of Prudential–Bache Securities, Inc., Depew,* 814 F.Supp. 1081, 1083 (M.D.Fla.1993).[5]

Nor is there a statutory basis for an award of fees. Unlike certain federal statutes, *see, e.g.,* 29 U.S.C. § 1401(a)(2), the FAA does not provide an independent source of authority for an award of attorneys' fees. *See Brotman v. Sant Cassia Investment Management,* 1997 WL 401671, at *4 (S.D.N.Y.1997). Additionally, Asturiana has not pointed this Court to any New York statute applicable to the instant case, and the Court's research has revealed none.

Finally, the arbitrator gave no explanation for the award of attorneys' fees and Asturiana has offered none that remotely squares with New York law. The Court finds, therefore, that the arbitrator's award of attorneys' fees to Asturiana was in "manifest disregard" of New York substantive law, which in this regard was "well defined, explicit, and clearly applicable to the case." *Halligan,* 148 F.3d

197, 201; *see also id.* at 202 (suggesting that "when a reviewing court is inclined to hold that an arbitration panel manifestly disregarded the law, the failure of the arbitrator[ ] to explain the award can be taken into account"); *cf. DeGaetano v. Smith Barney, Inc.,* 983 F.Supp. 459, 463–64 (S.D.N.Y.1997) (finding manifest disregard where arbitrator incorrectly applied substantive Title VII rule on attorneys' fees).[6]

The Court has considered the parties' other arguments and finds them without merit. Accordingly, for the foregoing reasons, the arbitrator's award is hereby reduced to an amount of $290,621.62, and as such is confirmed with interest to be calculated and partial payments to be applied in the manner previously specified by the arbitrator. Clerk to enter judgment.

SO ORDERED.

---

5. *But cf. Silvester Tafuro Design, Inc. v. Sachs,* 1996 WL 257668, at *4 (S.D.N.Y.1996) (stating, while also relying on several other grounds for upholding an arbitrator's award of attorneys' fees, that inclusion of AAA Rule 43 in a contract constitutes "an agreement to submit all claims encompassed by this provision to arbitration").

6. *DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818 (2d Cir.1997), in which the Second Circuit

refused to find an arbitrator's failure to award attorneys' fees under the mandatory provisions of the ADEA to be manifest disregard of the law—the converse of the case at hand—is distinguishable, because it hinged on the Court's determination, after a review of a transcript of the proceedings, that the arbitrator was not aware of the applicable law. *See id.* at 822–23. Here, the arbitrator was himself an attorney.