OPINION OF THE COURT
Joan A. Madden, J.
Petitioner Bear Stearns & Co. moves pursuant to section 10 of the Federal Arbitration Act (FAA) (9 USC § 10) and CPLR 7511 to vacate an arbitration award of the Financial Industry Regulatory Authority (FINRA), formerly the National Association of Securities Dealers (NASD),[1] or, in the alternative, to modify the award to the extent it grants respondent $250,000 in attorneys’ fees. Respondent Christopher A. Fulco opposes the motion and cross-moves to confirm the award.
Background
Fulco is a former employee of Bear Stearns, a broker-dealer and a member of the New York Stock Exchange (NYSE) and the NASD. On November 9, 1992, Fulco signed an arbitration agreement that provides, in relevant part, that:
“In consideration of employment with Bear Stearns, all employees hereby agree [ ] to submit to final and binding arbitration of any and all claims, controversies of any nature whatsoever and disputes arising out of or related in any way to their employment at Bear Stearns, including by way of employment, cessation of employment.... Said arbitration shall be conducted only by a panel of the New York Stock Exchange, Inc., American Stock Exchange, or th[e] National Association of Securities Dealers, Inc., as Bear Stearns[ ] in its sole discretion shall elect. . ..”
The underlying arbitration arises out of Bear Stearns’ allegedly wrongful termination of Fulco from his position as a relationship manager in Bear Stearns’ Global Clearing Services Department where he earned approximately $100,000 per year. *825 In late 2003, various regulatory authorities began investigating Bear Stearns’ involvement with certain clients who were allegedly market-timing mutual funds and making trades after market hours. In February 2004, Fulco was fired for his asserted failure to follow “[f]irm policy” related to mutual fund trading.
On November 1, 2005, Fulco commenced an arbitration proceeding before the NASD, by filing a statement of claim and a uniform submission agreement, under which he agreed to conduct the arbitration in accordance with the rules of the NASD. The statement of claim alleged that Bear Stearns terminated Fulco’s employment for illegitimate reasons, and that there was no “[flirm policy” regarding mutual fund trading, that all trading was approved by senior management, that Bear Stearns marked up Fulco’s NYSE Form RE-3 (hereinafter Form RE-3) with false and defamatory statements and that, as a result, since his termination he was unable to secure a job on Wall Street. The statement of claim alleged that Bear Stearns’ improper conduct constituted defamation, tortious interference with business relationships, breach of contract, and breach of securities rules and regulations, and sought compensatory and punitive damages and costs and attorneys’ fees, as well as an order that Bear Stearns file an amended Form RE-3, and that the Form RE-3 be expunged from the records of the NYSE.
On February 17, 2006, Bear Sterns filed a uniform submissions agreement, agreeing to arbitrate in accordance with the rules of the NASD, and an answer in which it asserted that it fired Fulco based on his violation of the firm’s policy that broker-dealer clearing clients comply and that Bear Stearns cooperate with requests by mutual funds to discontinue market-timing trading, and that Fulco misled lawyers retained by Bear Stearns who were investigating market-timing trading allegations. Bear Stearns’ answer sought dismissal of Fulco’s claims and requested costs incurred in defending against that statement of claim, including attorneys’ fees.
The NASD appointed three neutral arbitrators to hear and decide the dispute. The arbitration included 6 prehearing sessions and 7 days of 13 sessions of arbitration hearings over a four-month period between April and July 2007. During his opening statement Fulco’s counsel specifically requested attorneys’ fees. In his opening statement, Bear Stearns’ counsel did not withdraw its request for attorneys’ fees and told the panel the case was so flawed that it never should have been *826 brought.[2] Bear Stearns filed a motion to dismiss dated April 5, 2007, in which Bear Stearns did not mention its request for attorneys’ fees or withdraw such request. Fulco filed his response to the motion on July 13, 2007 and again requested attorneys’ fees. By e-mail dated July 20, 2007, counsel to Fulco informed counsel to Bear Stearns that he was “preparing an attorney affirmation in support of our application for attorneys’ fees and costs which I will be handing to the Panel during closing arguments. I will simply recite the costs and attorneys’ fees incurred by Fulco.” (Respondent’s answer to petition, exhibit H.)
At the July 23, 2007 hearing, Fulco reserved his entire closing argument for rebuttal and thus, Bear Stearns presented its argument first. During closing argument, the only reference to attorneys’ fees made by Bear Stearns’ counsel was as follows:
“I know that [Fulco’s attorney] is going to hand up a claim for attorneys’ fees. He’s going to hand up his cost to the retainer agreement or an affidavit which is fine. Under the law, this Panel can only award attorneys’ fees if the underlying claim gives a right to attorneys’ fees, and it’s the Claimant’s responsibility and burden to prove it. But once again, none of these statutes and none of the common law claims even allow attorneys’ fees. Again they ask you to ignore the law, and that would leave employers with no guidance whatsoever. So on legal grounds alone, all of these claims have to be dismissed.”
In rebuttal, Fulco’s attorney asserted that Fulco was entitled to attorneys’ fees as New York law provides that if the parties include a demand for attorneys’ fees in their submissions to the arbitrators, the parties place the issue of attorneys’ fees before the arbitrators and the arbitrators have authority to award such fees. In support of its position, Fulco handed the panel a copy of Silvester Tafuro Design, Inc. v Sachs (1996 WL 257668, 1996 US Dist LEXIS 6618 [SD NY 1996]), and pointed out that Fulco requested attorneys’ fees in its statement of claim and Bear Stearns requested attorneys’ fees in its answer. In addition, during closing argument, James McCaffrey, the securities industry member of the panel, referenced the case of PaineWeb *827 ber Inc. v Bybyk (81 F3d 1193, 1202 [2d Cir 1996]), as giving the panel authority to award attorneys’ fees.
Fulco also provided the panel with a summary of the total monetary damages he was requesting and an affirmation by Ross B. Intelisano, Esq., in support of Fulco’s application for attorneys’ fees and costs. The Intelisano affirmation indicates that Fulco had paid Rich & Intelisano, LLP $27,500 in legal fees to date, was responsible for an additional 20% of the first $150,000 awarded, plus 33[1]/3% of all sums over $150,000, and that Fulco had incurred $14,271.51 in out-of-pocket expenses and prior legal fees to another law firm in connection with his claims against Bear Stearns.
After Fulco’s rebuttal, Bear Stearns’ counsel informed the panel that Bear Stearns was withdrawing its request for attorneys’ fees, and handed two cases to the panel, Matter of Matza v Oshman, Helfenstein & Matza (33 AD3d 493 [1st Dept 2006]) and Matter of Stewart Tabori & Chang (Stewart) (282 AD2d 385 [1st Dept 2001], lv denied 96 NY2d 718 [2001]), and argued that based on these cases, once Bear Stearns withdraws its request for attorneys’ fees, the panel no longer has the authority to award such fees.
The panel reserved decision on the issue of attorneys’ fees including whether to grant Bear Stearns’ request to withdraw its claim for such fees.
On October 1, 2007, the panel issued the award which directed Bear Stearns “to take all reasonable steps necessary to withdraw its filing of [Fulco’s] Form RE-3 with the New York Stock Exchange,” awarded Fulco $250,000 in attorneys’ fees, and denied all other requests for relief. With respect to the award of attorneys’ fees, the award states that “[a]t the July 23, 2007 hearing [Bear Stearns] asked that its request for attorneys’ fees be withdrawn. After due deliberation, the Panel denies [Bear Stearns’] request.” The award further states that “the Panel is awarding attorneys’ fees pursuant to case law where the Panel is authorized to grant attorneys’ fees when both sides made the request.”
On October 10, 2007, Bear Stearns filed a motion for reconsideration to the panel seeking to modify the award on the grounds that Fulco’s attorneys did not request $250,000 in fees and therefore the award of this amount was illogical and without basis, or in the alternative, to correct the typographical error in the award.
*828 In response, Fulco argued that unless the amount of attorneys’ fees awarded was a typographical error, Bear Stearns’ request to modify the award must be made to the court and not the panel. Fulco also asserted that as the matter before the panel was heavily litigated over a four-month period during which the parties engaged in motion practice, extensive document production and participated in six prehearing sessions and seven days of arbitration hearings, and as his attorneys had expended 480 hours of legal time, the award of $250,000 for attorneys’ fees was logical, reasonable and supportable.
In its reply, Bear Stearns argued that since its request for legal fees was “boilerplate” and as it sought to withdraw its request during closing arguments, it did not acquiesce to the panel’s consideration of attorneys’ fees. In his surreply, Fulco argued, inter alia, that the request for attorneys’ fees in arbitration is serious, and that he completed a long and expensive arbitration process knowing that he could be liable for Bear Stearns’ attorneys’ fees.
The decision dated October 19, 2007, written by Daniel E Lund, a practicing attorney and chairman of the panel, denied the motion for reconsideration, stating that “[a]fter telephonic deliberation, application for reconsideration and modification of award of attorneys’ fees denied.”
On December 3, 2007, Bear Stearns commenced this proceeding to vacate or to modify the award to the extent that $250,000 in attorneys’ fees was awarded to Fulco. Fulco opposes the petition and cross-moves to confirm the award.
Discussion
Under CELR 7511, an arbitration award may be vacated on the following three grounds: (1) it violates a strong public policy; (2) it is irrational; or (3) it clearly exceeds a specifically enumerated limitation on the arbitrator’s power. (Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 326 [1999]; Hackett v Milbank, Tweed, Hadley & McCloy, 86 NY2d 146 [1995].) “[J]udicial review of arbitration awards is extremely limited.” (Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 479 [2006], cert dismissed 548 US 940 [2006] [citation omitted].)
Here, as the underlying dispute concerns employment in the securities industry, it is governed by the Federal Arbitration Act (9 USC § 1 et seq.; see Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith, 85 NY2d 173, 180 [1995]).
*829 The FAA permits vacatur of an arbitration award: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted could not be made.
In this case, Bear Stearns asserts that the arbitrators exceeded their powers in awarding attorneys’ fees, and manifestly disregarded the law by ignoring the holdings in Matter of Matza v Oshman, Helfenstein & Matza (33 AD3d 493 [2006]) and Matter of Stewart Tabori & Chang (Stewart) (282 AD2d 385 [2001]), which were submitted to the panel by Bear Stearns in support of its argument that the withdrawal of Bear Stearns’ request for attorneys’ fees precluded the award of such fees.
Rejection of an award under the “manifest disregard” theory is limited to those “ ‘exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent.’ ”[3] (Matter of Roffler v Spear, Leeds & Kellogg, 13 AD3d 308, 310 [1st Dept 2004], quoting Duferco Intl. Steel Trading v T. Klaveness Shipping A/S, 333 F3d 383 [2d Cir 2003].)
To vacate an award on the ground of manifest disregard of the law, it must be shown that (1) “the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether,” and (2) “the law ignored by the arbitrators [was] well defined, explicit, and clearly applicable to the case.” (Matter of Roffler v Spear, Leeds & Kellogg, 13 AD3d at 310 [citations and internal quotation marks omitted].)
“It is not enough that the moving party provide proof that the arbitrator was aware of the governing legal principle; there must also be a [specific] showing of intent.” (Westerbeke Corp. v Daihatsu Motor Co., Ltd., 304 F3d 200, 217 [2d Cir 2002] [citation omitted].) Thus, a party seeking to vacate an award must show that “ ‘the arbitrator knew of the relevant [legal] *830 principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.’ ” (See Morgan Stanley DW Inc. v Afridi, 13 AD3d 248, 250 [2004], quoting Westerbeke Corp. v Daihatsu Motor Co., Ltd., 304 F3d at 217.)
Under this standard, it cannot be said that the award of attorneys’ fees was made in manifest disregard of the law. Since under the American rule attorneys’ fees are not generally recoverable, the party seeking such fees bears the burden of demonstrating that the arbitrators have the authority to award them. (Silvester Tafuro Design, Inc. v Sachs, 1996 WL 257668, *4, 1996 US Dist LEXIS 6618, *11-12 [1996].) The courts have found that this burden is met when the record shows that the parties have acquiesced in the awarding of attorneys’ fees by their conduct during the arbitration, including by demanding attorneys’ fees in their submissions. (See Matter of Goldberg v Thelen Reid Brown Raysman & Steiner LLP, 52 AD3d 392 [1st Dept 2008], lv denied 11 NY3d 749 [2008]; Spector v Torenberg, 852 F Supp 201, 210 [SD NY 1994].)
That being said, however, in applying New York’s special arbitration rules which narrowly restrict the arbitrators’ authority to award attorneys’ fees, the courts have vacated awards of attorneys’ fees when the parties’ requests for such fees were deemed to be “boilerplate” and the party against whom attorneys’ fees were awarded withdrew its request for attorneys’ fees, or never pursued them. (See Matter of Matza v Oshman, Helfenstein & Matza, 33 AD3d 493 [2006]; Matter of Stewart Tabori & Chang [Stewart], 282 AD2d 385 [2001].)
In this case, the panel did not ignore any clearly applicable legal principles in awarding Fulco attorneys’ fees. Specifically, as stated in the award, the panel found that both parties acquiesced in the award of fees by including a demand for them in their submissions. Moreover, the award stated that the panel did not permit Bear Stearns to withdraw its request for attorneys’ fees after it made its closing statement and following Fulco’s rebuttal. (See Matter of Goldberg v Thelen Reid Brown Raysman & Steiner LLP, 52 AD3d 392, 393 [2008] [holding that respondents’ attempt to withdraw their request for attorneys’ fees in connection with their counterclaim did not warrant vacating the award for such fees where “there was no such attempt in connection with their defense of the arbitration proceeding”].)
In addition, Matza v Oshman, Helfenstein & Matza and Stewart Tabori & Chang (Stewart) are not clearly applicable to this *831 matter since those cases are governed by New York’s special arbitration rules which require an “ ‘unmistakably clear’ expression of a party’s intention to waive the rule that parties are responsible for [paying] their own attorneys’ fees” (Matter of Matza v Oshman, Helfenstein & Matza, 33 AD3d at 495 [citation omitted]; see also CPLR 7513), whereas the arbitration agreement signed by Fulco contained no New York choice of law clause and was governed by the FAA which provides no similar restriction on the award of attorneys’ fees.[4] (See Silvester Tafuro Design, Inc. v Sachs, 1996 WL 257668, *4, 1996 US Dist LEXIS 6618, *11-12 [1996] [noting that New York law did not limit the arbitrator’s power to award attorneys’ fees as the parties’ arbitration agreement did not contain a New York choice of law clause]; see generally Matter of Smith Barney, Harris Upham & Co. v Luckie, 85 NY2d 193 [1995].)
Alternatively, although not specifically stated in the award, the arbitrators also may have found that the parties agreed to arbitrate the issue of attorneys’ fees by virtue of their broad agreement to arbitrate “all controversies” and based on their execution of uniform submission agreements agreeing to arbitration in accordance with the NASD rules. (See Matter of RAS Sec. Corp. [Williams], 251 AD2d 98 [1st Dept 1998] [holding that arbitrators were empowered to award attorneys’ fees where parties agreed in their uniform submissions agreements to submit attorneys’ fees to arbitration]; PaineWebber Inc. v Bybyk, 81 F3d 1193, 1199 [1996] [finding that arbitration agreement in which parties agreed to submit “any and all controversies (to) arbitration” was sufficient to constitute an agreement to make attorneys’ fees subject to arbitration].) This conclusion is supported by the reference made by James McCaffrey, the securities industry member of the panel, to PaineWebber Inc. v Bybyk, as giving the panel authority to award attorneys’ fees.
In addition, while there is case law supporting Bear Stearns’ position that the parties’ agreement to arbitrate “all controversies” and to abide by the rules of the NASD does not constitute an agreement to give the arbitrators authority to award attorneys’ fees (see e.g. Asturiana De Zinc Mktg., Inc. v LaSalle Rolling Mills, Inc., 20 F Supp 2d 670 [SD NY 1998]), such *832 conflicting legal authority does not provide a ground for vacating an arbitration award.
Next, as there exists a legally viable basis for the award of attorneys’ fees based on the parties’ mutual request for such fees and/or parties’ agreement to arbitrate, it cannot be said that the arbitrators exceeded their authority in awarding such fees or that the award violated public policy.
The remaining issue for the court is whether the amount of the attorneys’ fees awarded is subject to vacatur or modification. Bear Stearns argues that the award of $250,000 in attorneys’ fees was unreasonable as a matter of law since Fulco’s attorneys did not request this amount of fees and provided no time records or other documentation to support it.
“Arbitrators are not required to disclose the basis upon which their awards are made.” (Kurt Orban Co. v Angeles Metal Sys., 573 F2d 739, 740 [2d Cir 1978].) Thus, as long as some ground for the arbitrators’ award can be inferred from the facts, the award should be confirmed. (ConnTech Dev. Co. v University of Conn. Educ. Props., Inc., 102 F3d 677, 686 [2d Cir 1996].) Otherwise put, an arbitration award will be enforced if there is “ ‘a barely colorable justification for the outcome reached.’ ” (Josephthal & Co., Inc. v Cruttenden Roth Inc., 177 F Supp 2d 232, 236 [SD NY 2001], quoting Landy Michaels Realty Corp. v Local 32B-32J, Serv. Empl. Intl. Union, AFL-CIO, 954 F2d 794, 797 [2d Cir 1992].)
Similarly, under New York law, “an arbitration award cannot be vacated if there exists any plausible basis for it.” (Matter of Brown & Williamson Tobacco Corp. v Chesley, 7 AD3d 368, 372 [1st Dept 2004] [reversing trial court and reinstating a $1.25 billion fee award to attorneys involved in settling tobacco litigation]; see New York Merchants Protective Co., Inc. v Salloom Import & Export Corp., 18 Misc 3d 129[A], 2007 NY Slip Op 52458[U], *2 [App Term, 2d & 11th Jud Dists 2007] [confirming arbitration award including award of attorneys’ fees in the amount of $1,500 noting that “(o)nce a case is referred to an arbitrator, all questions of fact and law are within the judicially unreviewable purview of the arbitrator”].)
Under this standard, there exists a sufficient basis for the award of $250,000 in attorneys’ fees based on the extensive nature of the arbitration proceeding, and the arbitrators’ opportunity to evaluate the nature, extent and quality of the legal work performed by Fulco’s attorneys in connection with the *833 proceeding held before them,[5] in which they granted partial relief to Fulco.[6] (See e.g. Fiero Bros., Inc. v Southwest Sec., Inc., 2000 WL 510899, *4, 2000 US Dist LEXIS 5566, *13 [2000] [denying application to vacate award of attorneys’ fees, noting that “(i)n fashioning the award of attorneys’ fees, the Panel based the award on the only information before it, i.e. the parties’ (own) estimates”].) Moreover, as a basis for the award can be inferred from the facts of the case, the panel’s failure to explain how they determined the amount of attorneys’ fees awarded is not a ground for vacatur. (Kurt Orban Co. v Angeles Metal Sys., 573 F2d at 740; see also Matter of Marfrak Realty Corp. v Samfred Realty Corp., 140 AD2d 524, 525 [2d Dept 1988], lv denied 74 NY2d 614 [1989] [holding that an “arbitrator (is) under no obligation to specifically mention the particular issues or to explain the decision”].)
Furthermore, Bear Stearns’ reliance on Porzig v Dresdner, Kleinwort, Benson, N. Am. LLC (497 F3d 133 [2d Cir 2007]) is misplaced. In Porzig, the Court of Appeals for the Second Circuit vacated a modified award issued after remand based on the panel’s failure to award the claimant reasonable attorneys’ fees in accordance with the Age Discrimination in Employment Act. In reaching this conclusion, the court wrote that the lack of “any transparent fee calculation analysis by the Panel . . . handicaps our ability to review the reasonableness of the Modified Award.” (497 F3d at 143.) However, the court specifically noted that in general “arbitration] panels are not required to explain their awards” and limited its holding to the circumstances where, like the case before it, the panel’s previous award had been vacated “after a federal court had taken the rare step of concluding, correctly, that the Panel had acted in manifest disregard of the law” and, on remand, the panel issued a part of the award “without any authority.” (Id. at 143 n 7.) As the circumstances underlying the decision in Porzig are not present here, the arbitrators in this case were not required to explain the basis for awarding $250,000 in attorneys’ fees to Fulco.
*834 Bear Stearns’ alternative request that the award be modified is also denied. “The grounds to modify an award . . . are extremely limited and exist only where there is an evident material miscalculation or mistake, the award reach[es] matters not before the arbitrators or there is an error in form.” (Josephthal & Co., Inc. v Cruttenden Roth Inc., 177 F Supp 2d at 238-239; 9 USC § 11.) Here, there is no basis for finding that the arbitrators made the type of mistake that would warrant modification of the award, particularly as the panel’s chairman denied Bear Stearns’ request to correct this type of error. Finally, since the attorneys’ fees request by Fulco was submitted to the panel, the award is not subject to modification pursuant to CPLR 7511 (c) (2), which provides that an award shall be modified when the “arbitrators have awarded upon a matter not submitted to them.”
Accordingly, the application to vacate the award is denied, and the cross motion to confirm it is granted.

. In 2007, the regulatory arm of the NASD merged with the New York Stock Exchange and adopted the FINRA name. For ease of reference, this opinion will continue to use the more familiar NASD name.

. These and other references to statements made during the arbitration proceedings are based on the undisputed descriptions of such statements contained in the parties’ papers. The court is relying on such descriptions since neither party submitted a transcript of the arbitration proceeding, and the tapes submitted by respondent are too burdensome for the court to review.

. The United States Supreme Court has recently raised the issue of whether manifest disregard constitutes an additional nonstatutory ground for vacating an award or merely refers collectively to the grounds provided under section 10 of the FAA. (See Hall Street Associates, L.L.C. v Mattel, Inc., 552 US —, —, 128 S Ct 1396, 1404 [2008].)

. The court notes that while the special arbitration rules of New York do not apply, New York substantive law would govern the interpretation of the parties’ agreement since the parties are residents of New York and the underlying events occurred in New York. (See generally Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39 [1997].)

. Notably, the chairman of the panel, Daniel E Lund, has been a practicing attorney for over 40 years.

. In support of his cross motion to confirm the award, Fulco submits to the court time records that his counsel kept regarding the work performed in connection with the arbitration proceeding. However, as these records were not provided to the arbitrators in support of Fulco’s request for attorneys’ fees, they are not appropriately considered in determining whether the award should be confirmed.