OPINION OF THE COURT
Bernard J. Fried, J.
Motion sequence Nos. 001 and 002 are consolidated for disposition, and are disposed of in accordance with the following decision and order.
Petitioners move, pursuant to CPLR article 75, for an order confirming an arbitration award in the Financial Industry Regulatory Authority (FINRA)* arbitral proceedings between petitioners and respondent International Capital & Management Company LLC (ICMC), dated January 13, 2011, and directing judgment in favor of petitioners in the amount awarded of $316,922.53 plus interest. Respondent moves, pursuant to CPLR 7511 and section 10 of the Federal Arbitration Act (9 USC § 10), to vacate the arbitration award or, in the alternative, to modify the award to the extent it grants petitioners $316,922.53 in attorneys’ fees.
ICMC was a customer of petitioner Bear Stearns & Co. Inc. (BS & Co.), and had made a $5 million investment in a hedge fund known as the Bear Stearns High Grade Fund. This fund went to zero value in July 2007. On October 12, 2005, ICMC had signed a customer agreement with BS & Co. that provides, in relevant part, that
“BY SIGNING THIS AGREEMENT YOU AND BEAR STEARNS AGREE, THAT CONTROVERSIES ARISING UNDER OR RELATING TO THIS AGREEMENT OR ANY ACTIVITY BETWEEN YOU AND BEAR STEARNS, . . . SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE HELD ONLY AT THE FACILITIES OF, BEFORE AN ARBITRATION PANEL APPOINTED BY, AND PURSUANT TO THE RULES OF THE NEW YORK STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION FOR SECURITIES DEALERS, INC.” (Petition 11 3, quoting § 25 [a] of Customer Agreement, annexed as exhibit A thereto.)
*609 The underlying arbitration arises out of ICMC’s claims that petitioners committed common-law and securities fraud in connection with the hedge fund, and that Bear Stearns failed to process and revoked ICMC’s alleged irrevocable redemption of its investment in the hedge fund in October 2006 (see petition 1i 6, exhibit B annexed thereto). In the statement of claim, filed on July 25, 2008, ICMC sought recovery for breach of contract, negligence, promissory estoppel, fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and negligent misrepresentation. It sought, in addition to other damages, reasonable attorneys’ fees, and other costs and expenses (exhibit B to petition, statement of claim 1f 106). Petitioners filed a statement of answer in which they denied all claims and any liability, asserted affirmative defenses, and requested that ICMC be directed to pay costs, fees and expenses, including reasonable attorneys’ fees (exhibit C to petition, statement of answer at 24).
The parties engaged in extensive discovery, particularly with regard to the fraud claims and ICMC’s motions to compel discovery in connection with those claims (petition 11 9). On June 28, 2010, five weeks before the hearings were scheduled to commence, ICMC moved to withdraw its fraud claims with prejudice (exhibit D to petition). With the motion, ICMC filed an amended statement of claim in which the fraud claims were struck out. The request for attorneys’ fees was not struck out of ICMC’s amended statement of claim. BS & Co. and Norman Lang, the only remaining parties, filed an amended statement of answer, which also continued to request attorneys’ fees (id.).
By letter dated July 12, 2010, Bear Stearns petitioned the arbitration panel for attorneys’ fees and costs incurred in connection with ICMC’s prosecution and subsequent withdrawal of its fraud claims just shortly before trial (exhibit G to affidavit of Robert D. Cheifetz). By letter dated July 15, 2010, ICMC responded to the petition, contending that it had the right to withdraw the claims, and that petitioners could not cite to any FINRA rule, or other basis, under which the arbitration panel had the authority to award fees (exhibit D to Cheifetz aff). Also by letter dated July 15, 2010, Bear Stearns replied to ICMC, arguing that there was a legal basis to award attorneys’ fees under FINRA Manual rule 12212; it had already awarded them in this case for previous discovery abuses by ICMC; and both parties had requested that the panel award attorneys’ fees in their statement of claim and statement of answer, placing the issue squarely before the panel (exhibit E to Cheifetz aff).
*610 On July 16, 2010, the arbitration panel granted ICMC’s motion to withdraw the various fraud claims, and directed Bear Stearns to file a petition for attorneys’ fees and costs with documentation, and indicated that ICMC could file a response (exhibit F to Cheifetz aff). On August 23, 2010, ICMC filed a response to Bear Stearns’ petition, again arguing that petitioners had failed to cite a FINRA rule or other basis for the panel to award fees and costs for the withdrawal of claims before a hearing (exhibit H to Cheifetz aff). It, however, did not withdraw its request for attorneys’ fees, or make any reference to it in the letter. On September 15, 2010, Bear Stearns was ordered by the panel to submit for in camera review additional documentation supporting its petition for attorneys’ fees and costs (exhibit I to Cheifetz aff).
The arbitration hearings took place on August 2 through 6 and December 6 through 8, 2010 (petition 1Í 12). In the December 8, 2010 hearing, in its closing argument, ICMC stated that “[w]e had a claim for attorneys’ fees in this case as part of our claim under the securities laws. We have dismissed that. . . We’re not asking for attorneys’ fees” (exhibit J to Cheifetz aff, transcript of Dec. 8, 2010 arbitration hearing at 1840, 2027). On that same date, on December 8, 2010, the arbitration panel issued an order, directing ICMC to pay Bear Stearns $316,922.53 in attorneys’ fees and costs on or before January 14, 2011 (exhibit L to Cheifetz aff).
On January 13, 2011, the arbitration panel issued an award denying and dismissing all of ICMC’s claims with prejudice, and explicitly incorporating the December 8, 2010 order requiring ICMC to pay $316,922.53 to Bear Stearns for attorneys’ fees and costs (the final award) (exhibit F to petition at 5). On January 19, 2011, petitioners commenced this proceeding to confirm the final award.
Respondent now moves to dismiss the petition, and to vacate and modify that portion of the final award which incorporated the prior order of the panel directing ICMC to pay petitioners’ attorneys’ fees. It urges that the panel exceeded its powers by awarding attorneys’ fees and costs. It asserts that the parties’ contract did not provide for such fees, and that the FINRA rules do not provide otherwise. Respondent further contends that there was no clear expression of the parties’ intention to waive the rule that parties are responsible for their own attorneys’ fees. ICMC argues that, in its closing argument at the arbitration hearing, it made clear to the panel that it withdrew the *611 fraud claims that sought the attorneys’ fees, and it objected to petitioners’ request for such fees, and thus, that there was no consensual agreement between the parties to provide the panel with the authority to award fees.
Courts are obligated to give deference to the determination of an arbitrator (Matter of Henneberry v ING Capital Advisors, LLC, 10 NY3d 278, 284 [2008]), and “judicial review of arbitration awards is extremely limited” (Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 479 [2006], cert dismissed 548 US 940 [2006]). In order for a court to vacate an arbitration award, the court must find that the award violates public policy, is totally irrational, or exceeds a specifically enumerated limitation on the arbitrator’s power (Matter of Henneberry v ING Capital Advisors, LLC, 37 AD3d 353, 353 [1st Dept 2007], affd 10 NY3d 278 [2008]). The arbitrator may do justice as he or she sees fit, and may apply his or her own sense of equity and law to the facts as he or she finds them (id.). The arbitrator may make an award reflecting the spirit rather than the letter of the parties’ agreement (id.). Here, respondent has failed to show that the arbitration panel’s award was violative of public policy, was totally irrational, or exceeded a specifically enumerated limitation of power (see id.).
ICMC asserts that the arbitration panel exceeded its powers in awarding attorneys’ fees. In order for attorneys’ fees to be appropriately awarded in an arbitration, they must be provided for in a statute or in the parties’ agreement to arbitrate, or they must be requested by the parties during the arbitration process (see Matter of Matza v Oshman, Helfenstein & Matza, 33 AD3d 493, 494 [1st Dept 2006]; see also Matter of Warner Bros. Records [PPX Enters.], 7 AD3d 330, 331 [1st Dept 2004] [where both sides are on record as having requested attorneys’ fees, award of such fees is appropriate]). Mutual demands for attorneys’ fees in an arbitration proceeding “constitute, in effect, an agreement to submit the issue to arbitration, with the resultant award being valid and enforceable” (Matter of Goldberg v Thelen Reid Brown Raysman & Steiner LLP, 52 AD3d 392, 392-393 [1st Dept 2008], lv denied 11 NY3d 749 [2008]; see Matter of Warner Bros. Records [PPX Enters.], 7 AD3d 330 [2004], supra). Parties may acquiese in the award of attorneys’ fees by their conduct during the arbitration, including demanding attorneys’ fees in their submissions (see Matter of Goldberg v Thelen Reid Brown Raysman & Steiner LLP, 52 AD3d at 392-393; see also Spector v Torenberg, 852 F Supp 201, 210 [SD NY *612 1994]). If the requests for fees were simply boilerplate, were never pursued, and then were withdrawn, the award may be vacated (see Matter of Matza v Oshman, Helfenstein & Matza, 33 AD3d at 494 [opposing party never reiterated attorneys’ fee request, and affirmatively told panel it was not seeking such award]; Matter of Stewart Tabori & Chang [Stewart], 282 AD2d 385 [1st Dept 2001], lv denied 96 NY2d 718 [2001] [withdrew any claim for fees]).
Here, the panel did not exceed its powers by ignoring any clearly applicable legal principles in awarding petitioners attorneys7 fees. The panel apparently found that both parties acquiesced in the award of fees by including a demand for them in both their initial submissions (the statement of claim and statement of answer) and in their later revised submissions (the amended statement of claim and amended statement of answer), and by ICMC’s failure to withdraw its request in any of its oppositions to petitioners’ petition for such fees (see Matter of Goldberg v Thelen Reid Brown Raysman & Steiner LLP, 52 AD3d at 392-393). The cases relied upon by ICMC, Matter of Stewart Tabori & Chang (Stewart) (282 AD2d 385 [2001], supra) and Matter of Matza v Oshman, Helfenstein & Matza (33 AD3d at 494), are distinguishable. In both those cases, the parties made only boilerplate requests for such fees, and the opposing side never reiterated that request during the arbitration, and, in Matza, the party withdrew its own fee request. Here, not only did ICMC request attorneys’ fees in its initial statement of claim, but it reaffirmed that request in the amended statement of claim, filed after ICMC struck out the provisions regarding all of the withdrawn fraud claims. In addition, in several letters to the panel regarding petitioners’ attorneys’ fees petition, ICMC did not withdraw its request for such fees, simply challenging that the panel had the authority to award them to petitioners with regard to ICMC’s withdrawal of its fraud claims. Further, ICMC did not withdraw its request for such fees at the start of the arbitration hearings in August, nor did it withdraw them when petitioners made an oral motion to dismiss. It was not until five months after the July motion seeking attorneys’ fees, the very last day of the hearings in December, after all the evidence had been submitted, when ICMC was making its closing argument, that ICMC indicated that it was withdrawing its request for such fees. It appears from the final award that the panel denied ICMC’s closing request for withdrawal of its attorneys’ fees request. ICMC had *613 acquiesced in the arbitrators’ consideration of the claim for attorneys’ fees (cf. Matter of Stewart Tabori & Chang [Stewart], 282 AD2d at 386). Moreover, ICMC fails to show that the arbitrators knew of, and ignored, clear and undisputed law. Petitioners presented to the panel, in their July 15, 2010 letter in further support of their request for attorneys’ fees, the Goldberg case, which clearly provided a basis for attorneys’ fees (exhibit E to Cheifetz aff). ICMC did not present any contrary cases (see exhibit H to Cheifetz aff). Further, an award may not be vacated for errors of law or fact (see Szabados v Pepsi-Cola Bottling Co. of N.Y., 191 AD2d 367 [1st Dept 1993]), or on the basis of conflicting legal authority (see Matter of General Sec. Natl. Ins. Co. [Aequicap Program Adm’rs], 2011 WL 1796365, 2011 US Dist LEXIS 49518 [SD NY 2011]). Alternatively, though not specifically stated in the final award, the panel may have found, based on the parties’ very broad agreement to arbitrate “controversies arising under or relating to this agreement,” and on their execution of uniform submission agreements (exhibits G & H to Fishman aff), in which they agreed to arbitrate in accordance with the NASD rules, that the parties agreed to arbitrate the issue of attorneys’ fees (see Bear Stearns & Co., Inc. v Fulco, 21 Misc 3d 823, 830 [Sup Ct, NY County 2008]). Thus, there exists a legally viable basis for the award of attorneys’ fees based on the parties’ mutual request for such fees, the arbitrators did not exceed their authority, and there was a rational basis for awarding such fees. Accordingly, it is adjudged that the petition is granted, and the award, in the amount of $316,922.53, rendered in favor of petitioners and against respondent is confirmed; and it is further ordered that the motion to vacate is denied.

 In 2007, the regulatory arm of the National Association of Securities Dealers (NASD) merged with the New York Stock Exchange (NYSE) to form FINRA, which then assumed responsibility for arbitrations previously overseen by NYSE and NASD.